<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELBY ROBERTS<br><br>　　　　　　　　Plaintiff,<br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　　　Defendant. | Civil Action No. 15-8350 (SDW)<br><br><br>**OPINION**<br><br><br>September 30, 2016 |

**WIGENTON,** District Judge.

Before this Court is Plaintiff Elby A. Robert's ("Plaintiff" or "Roberts") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Richard West's ("ALJ West") denial of Plaintiff's claim for Social Security Disability Insurance Benefits ("SSDI") pursuant to 42 U.S.C. § 405(g).

This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons stated herein, this court **AFFIRMS** the Commissioner's final decision.

I.　　**PROCEDURAL HISTORY AND FACTUAL HISTORY**

　　A.  **Procedural History**

On July 8, 2008, Plaintiff filed an application for SSDI benefits alleging disability since January 2, 2000 due to diabetes. (R. 89-90, 102.) The Social Security Administration (the

"SSA") denied Plaintiff's application initially and on reconsideration. (R. 52-53.) Plaintiff requested a hearing before an Administrative Law Judge, which was held on November 2, 2010. (R. 22-51.) On December 16, 2010, ALJ West issued a decision finding that Plaintiff was not disabled. (R. 8-21.) On June 8, 2012, the Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed an appeal in the District of New Jersey in the matter captioned *Roberts v. Comm'r of Soc. Sec.*, 12-cv-4289, 2013 WL 2096611, which the undersigned remanded for further proceedings by Order dated May 14, 2013. (R. 1-6, 404-422.)

In the 2012 case, this Court found that ALJ West properly considered the medical and opinion evidence of record, and thus his findings were supported by substantial evidence. (R. 419.) However, Plaintiff was not afforded a chance to cross-examine Vocational Expert, Rocco J. Meola ("VE Meola"), who had provided post-hearing responses to interrogatories posed to him by ALJ West. As this Court stated, "an opportunity for cross examination is an element of fundamental fairness … which a claimant is entitled" (R. 421-22) and it may be required for "a full and true disclosure of the facts." (R. 421.) ALJ West concluded that although Plaintiff could not perform his past relevant work, he could perform limited light work that existed in significant numbers in the national economy. This conclusion was based in part on VE Meola's responses, and thus this Court remanded the action for the limited purpose of allowing Plaintiff the opportunity to cross-examine the VE in a supplemental hearing. (R. 420-22.). On August 22, 2014, Plaintiff cross-examined VE Meola. (R. 359-74.)

After the supplemental hearing was conducted, ALJ West again issued an unfavorable decision on August 25, 2014. (R. 346-358.) The Appeals Council denied Plaintiff's request for review on October 20, 2015. (R. 330-333.) Plaintiff subsequently filed the instant action seeking reversal of the August 25, 2014 final decision. (Compl.1-3.)

### B. Factual History

#### 1. Personal and Employment History

Plaintiff was born on June 15, 1957.  (R. 15, 27.)  He received an Associate's Degree in architectural technology in September 1978.  (R. 27, 124.)  Plaintiff worked for the City of Newark as a special police officer from 1983 to 1991 and as a regular police officer from 1991 to 1993.  (R. 28.)  Plaintiff resigned from the police force in good standing in order to "open up [his] own trucking contracting business."  (R. 28.)  After his business "went bad," Plaintiff held numerous other jobs, including "police armed security work, truck driving work . . . driving buses, [and] operating heavy equipment."  (R. 29.)  Plaintiff's last job was as a truck driver for Short Hills Catering.  (R. 29.)  In October 2003, Plaintiff stopped working for Short Hills Catering "[d]ue to [his] sickness."  (R. 29.)  Specifically, Plaintiff complained of pains in his leg and back, and he suffered numbness in his feet and fingers.  (R. 30.)  Plaintiff claimed that the numbness made it difficult for him to brake and shift gears.  (R. 14, 30.)  Plaintiff has not worked since 2003. (R. 35.)

#### 2. Medical History

Plaintiff was diagnosed with diabetes approximately fifteen years ago.  (R. 31.)  Every three months since February 1998, Plaintiff has undergone a routine checkup at Newark Beth Israel Medical Center outpatient clinic for his diabetes.  (R. 123.)  He takes several medications, including Enalapril, Glipizide, Glimepride, and Metformin.  (R. 14, 124, 168.)  Plaintiff testified that he does not receive insulin.  (R. 14.)  Plaintiff also has restrictive lung disease, hypertension, and hypercholesterolemia. (R 13.)

Beginning in October 2009, Plaintiff complained of leg complications, including severe leg cramps, which prevented him from standing, sitting, or lying down for long periods of time.

(R. 15, 32-33.) He asserted that these leg pains have existed for over ten years. (R. 33.) Plaintiff also complained of back pain which first appeared in the record in May 2010. (R. 15.) Both the complaints of leg cramps and back pain occurred after Plaintiff's last insured date in December 2008. (R. 15.) Plaintiff also complained of numbness and tingling in his feet when standing and walking. (R. 36.) On May 5, 2011, Dr. Patel reported that Plaintiff complained about dizziness, exhaustion, frequent urination, thirst, pain from his hips to toes with or without walking, numbness in his fingers, and pain in his shoulder and lower back area. (R. 550-51.) Dr. Patel diagnosed Plaintiff with hypertension and diabetes mellitus, with a possibility of diabetic neuritis and bursitis or arthritis in the right shoulder. (R. 555.) In a letter dated August 21, 2013, Dr. Rosania reported he had been seeing the Plaintiff twice a week to treat an acute traumatic lumbosacral sprain/strain with severe (sciatica) radiculitis which affected his ability to stand or sit for prolonged periods of time. (R. 555-56.)

Plaintiff was evaluated by several state agency examiners. On November 13, 2008, Dr. Nancy Simpkins ("Dr. Simpkins") evaluated Plaintiff and concluded that "claimant is not functionally limited by either his type II [diabetes] or his cholesterol." (R. 190.) In June 2009, Plaintiff was evaluated by Dr. Augustin. (R. 14, 193-95.) Dr. Augustin found that Plaintiff could perform gross and fine manipulations, had mild restrictive airway disease, no musculosketal limitations, normal neurological findings, a glucose level of 146, a normal electrocardiogram, normal pulmonary arteries, and clear lung fields. (R. 15.) Dr. Augustin reported that Plaintiff's primary complaint was for dysphagia, although this first appeared in the record in February 2009, after the last insured date. (R. 15.)

### 3. Testimonial History

Plaintiff testified in his disability appeal before ALJ West on November 2, 2010 that his legs cramp up at night, that his medication causes him to suffer cold sweats (R. 32-33) and that he has dryness of mouth. (R. 33.) He testified that he cannot walk a block, stand, sit, or lie down for a period of time. *Id*. Plaintiff testified that when he stands, his main concern is numbness in his feet. (R. 35-36.) Plaintiff further testified that when he sits, he suffers cramps in his back and legs. (R. 35-36.) He testified that he was prescribed Neurontin to manage the pain and numbness. (R. 36.) Additionally, he received Cortisone shots and other muscle relaxers for the pain. (R. 40-41.)

Plaintiff testified that his typical day "is down to nothing," and that he is "locked in the house." (R. 41.) Plaintiff stated that his wife helps him wash his face because he cannot hold a towel. (R. 42.) Further, he stated that his wife's grandfather prepares breakfast and lunch for him. (R. 42.) He has trouble buttoning his shirts, zipping his jackets, typing on the computer, and signing his name because of the numbness in his fingers. (R. 43-45.) Plaintiff testified that he can only sleep for three or four hours at a time. (R. 43.) Plaintiff also testified that he is in increased pain in bad weather, such as rain and cold. (R. 48-49.)

Plaintiff testified to taking the following medications every day: 3,000 milligrams of Glucotrol, two ten-milligram pills of Glucophage, high blood pressure medication, muscle relaxers, and Bayer aspirin. (R. 47.) His wife's grandmother also checks his blood sugar twice a day. (R. 47-48.)

### 4. Vocational Expert's Testimony

On November 20, 2010, ALJ West sent written interrogatories to VE Meola. (*See* R. 177-81.) In his written answers to the interrogatories, VE Meola stated that Plaintiff could not perform

his past relevant work given his injuries. (R. 179.) VE Meola opined, however, that there are several jobs that exist in the national economy that Plaintiff could perform including a sorter, inspector/packer, assembler, tabber, and decal applier. (R. 180.) VE Meola further noted that these jobs exist in the Northern New Jersey region in numbers of 1,500, and in the national economy in numbers of 45,000. (R. 180.)

Pursuant to the District Court Order remanding the 2012 action, a supplemental hearing was held to give the Plaintiff an opportunity to cross-examine VE Meola. (R. 359-74.) VE Meola testified that a hypothetical individual with Plaintiff's impairments could hold jobs such as a tabber, inspector/packer or decal applier and these jobs allow for a "fatigue break", meaning he could be off task ten percent of the day and still maintain employment. (R. 371.) Furthermore, when Plaintiff's counsel alleged impairments beyond those in the established record, VE Meola opined that Plaintiff would still be able to do light work, as determined by the ALJ. (R. 367-73.) VE Meola noted, however, if an individual was off task over fifteen percent of the time (due to, for instance, the need to alternate standing and sitting every 10-15 minutes), it would impact his or her ability to complete tasks and maintain employment. (R. 372-73.)

## II. LEGAL STANDARD

### A. Standard of Review

In social security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.'" *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a

7

decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984) (citations omitted).

### B. The Five-Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . . " 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 480 (3d. Cir. 2007). If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as

work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910.  If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921; SSR 85-28, 96-3p, 96-4p.  An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If a severe impairment or combination of impairments is not found, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If, however, the claimant's impairment or combination of impairments

does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the SSA is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§

404.1560(c)(2), 416.960(c)(2).  If the claimant is unable to do any other SGA, he or she is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. DISCUSSION

Plaintiff's current appeal relies on substantially the same administrative record and hinges on the very same issues that this Court already decided in its prior Opinion. *Roberts*, 2013 WL 2096611, at 6-13.  The Plaintiff did not submit additional evidence that demonstrates a functional limitation existing prior to his date last insured beyond those included by ALJ West in his RFC assessment.[1]

The cross-examination of VE Meola also did not reveal any additional information that would compel this Court to reconsider its holding that ALJ West's findings were supported by substantial evidence.  (R. 367-73.)  VE Meola testified that a hypothetical person with Plaintiff's impairments that were established by the record could perform jobs that are considered 'light work' and existed in the national economy.[2]  (R. 367-71.)  Moreover, even when Plaintiff posed hypotheticals in his cross-examination that incorporated impairments beyond those established in the record, VE Meola opined that Plaintiff would still be able to perform light work, as determined by the ALJ.  *Id*.  VE Meola further stated that Plaintiff would be precluded from performing light work only if he would be off task fifteen percent or more of the workday.  (R. 372.)  Plaintiff neither established through cross-examination nor with additional evidence that he would be off task more than fifteen percent of the workday and thus unable to perform light work due to his

---

[1] Plaintiff submitted three additional medical documents (R. 547-56) which all pertain to the years 2011 or after and thus are past the date of last insured and do not provide any basis for an inference as to Plaintiff's RFC. (R. 383.)

[2] This Court previously held that the ALJ properly omitted Plaintiff's alleged impairments that were not supported by the record, appropriately fashioning his hypotheticals to established impairments; thus ALJ did not err in determining Plaintiff's RFC. (R. 427.)

impairments. *See* 68 Fed. Reg 51153, 51155 (Aug. 26, 2003) (commenting that it is claimant's burden to prove claimant's function limitations, i.e., the breaks a claimant would have to take every hour); 20 C.F.R. §40.1512(a) ("In general, you have to prove to us that you are . . . disabled.); *Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (finding that claimants bear the burden of establishing a disabling impairment).

IV. **CONCLUSION**

Because this Court finds that ALJ West's decision is supported by substantial evidence in the record, the Commissioner's determination is **AFFIRMED**.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**